18-1432 Stender v. Archstone-Smith Thank you, Your Honor, and may it please the Court, Daniel Wolf Townsend for the minutes for rebuttal. This Court has held for decades that state law may provide a basis for a federal costs award only in narrow circumstances. But the District Court here read this precedent far too broadly, granting nearly half a million dollars in costs based on a Colorado statute that is diametrically opposed to the federal costs regime. In doing so, the District Court violated the terms laid out by this Court in the Chaparral and Garcia cases and completely overturned the balance between federal and state laws provided for in cases like Erie and Scherweiler. Today, I'd like to talk primarily about first, the standards laid out in Chaparral and Garcia and how the District Court's opinion is inconsistent with them, and then second, the broader Erie question raised by Archstone's reading of the Colorado statute. So first, Garcia and Chaparral. These two cases hold that state law can provide a basis for awarding costs in a narrow set of circumstances. They use two different phrases to describe that set of circumstances. One where state law explicitly authorizes costs, another where state law expressly mandates those costs. But if you look at the reasoning in those cases, it's clear that those two different phrases really boil down to the same basic test. Does state law grant discretion to a trial judge to award the cost set issue? That's all you need to know to decide this case because it's clear that there's no question that the Colorado statute cited by the District Court here grants ample discretion for the award of different costs. Many of the cases cited by Archstone as well as the cases cited by us and the cases cited by the District Court all emphasize this discretion. There's no shortage of sources, but for a convenient one, I would point you to the case Murphy-Sims that Archstone filed in a 28-J letter last week that I think accurately describes the Colorado statute. Murphy-Sims says, quote, although the actual award of costs is not granted, discretion nevertheless remains with the trial court in deciding which costs to be included in such an assessment. Are we talking about two different things because we're talking about whether an award is mandated and then you're talking about the discretion of the District Court to determine how much? Aren't those two different things? That's right, Your Honor. And I think you can look to Garcia to see why the broad general mandate to award some sort of costs does not mean that every particular subset of costs or every particular item of costs is also mandated as well in a way that can be inconsistent with federal law. So Garcia has a statute where it says there's an express mandate to award costs in the Offer of Judgment statute. But then if you look at footnote 9 in Garcia or the last paragraph in Garcia, what this court said was it's not totally clear what specific costs are issued to us, so we're going to remand to the trial court for the trial court to decide what costs are issued here. And in the last paragraph, it says very clearly the trial court needs to decide what costs are issued with an eye to making sure that they don't conflict with federal law. So here we have Garcia saying there's this broad mandate, you've got to issue costs. When the District Court on remand looks at what costs are being awarded, you're going to still look at those specific items to make sure that those aren't inconsistent with federal law. I think another way you can look to that is in the Chaparral case where the statute issue there said shall, but there was still a discretion as to the amount of the costs being awarded. And what Garcia said was, you know, there is a shall, but courts still have discretion to determine the amount. And that discretion is cabined by federal law. So that's the reasoning underlying these cases is, you know, where there is discretion, federal law cabins the ability of courts to choose within that bounds, within that range. But your challenge, though, is not so much to the specific amount as to the categories of costs here. That's correct. And I think the Murphy-Sins quote that I was reading earlier explicitly says, it's quoting a state court case, by the way, it's quoting global indemnity. If this case had been litigated in a Colorado state court, would the defendants have been entitled to recover the costs that they recovered here? Maybe not, I'm talking about the amounts again, but for the electronic legal research and the travel costs, the costs that were awarded here. The costs certainly would have been available. It would have been within the discretion of a Colorado trial court to decide whether it should, in fact, award those. But those costs, we don't dispute that those are available under state law. How does that relate to the policies underlying ERIE? In other words, if these costs could be awarded in state court, why wouldn't preventing their award in federal court encourage the kind of forum shopping that ERIE was supposed to protect against? I understand the concern, Your Honor, and I would point to two responses. The first is that when it comes to costs, costs have been decided, settled in favor of federal law over state law for more than 150 years. I would look to what this court in Chaparral cites after Chaparral says federal cost controls in diversity cases, or federal law controls costs in a diversity cases. It cites the First Circuit's case in Bossie. It cites a treatise or an article in the Federal Reporter, Federal Rules Digest. And it cites Wright and Miller, Section 2669. But that's the overall statement. Well, so those, that's you look to federal law first, and then if federal law doesn't preclude state costs, you can get additional state costs, right? So that's correct, Your Honor. But getting to the forum shopping question that Judge Matheson was raising, those sources all talk about how when it comes to costs, the standard that the courts have accepted and that Congress has implemented is that these costs are going to be so minimal in most cases that forum shopping concerns really aren't raised. Well, the point is if under state law they wouldn't be minimal, then forum shopping concerns are raised. And that's what Judge Matheson, I think, was asking. So if this court decides to break with the general rule on costs because the Colorado statute does allow for greater costs to be awarded, I think you would still have to look to step one of the Erie and Schrierweiler analysis here. Because the questions about the Erie principles, forum shopping, outcome determination, all those sorts of things, they only apply when there is not a federal rule that's directly on point. And here there is a federal rule that is directly on point, Rule 54D1. Now Garcia said the federal rule isn't directly on point because they were comparing the offer of judgment statute to Rule 68. And Garcia says Rule 68 covers defendants. The statute at issue here covers plaintiffs. We're talking about different people who are getting costs in this context. That's not true here. Here, Rule 54D1 and the Colorado cost statute issue apply to the exact same people, both parties in every single case that reaches a judgment. So in terms of a more basic Erie analysis and the broader Erie concerns, I don't think you actually make it to the forum shopping issue where there is a direct federal rule on point. And that's also backed up, I think, by the history that's laid out in Crawford All of these cases say that Congress specifically passed a statute to avoid the practice of federal courts looking to state law when they're determining their costs awards. But wasn't Crawford, Crawford wasn't a diversity case. Crawford was a federal question case, that's correct. And neither was Taniguchi. Taniguchi is a diversity case. It's not clear from the Supreme Court's opinion, the Supreme Court doesn't mention it or cite statutes, but it's a personal injury case arising out of the Marianas Islands. But in Crawford, where the court used the words explicit statutory authority, wasn't it referring to federal statute? I think that that's likely the better reading of Crawford Fitting, that's correct. But I think that the Archstone's argument that these federal question cases don't have anything to say in diversity cases, I think is false. For one, for one thing, if you look at Shapiro and Garcia, they rely on Crawford Fitting regularly when they're trying to determine what the correct regime is here between federal costs and state costs. More broadly, when you're making that eerie step one analysis, whether there's a collision between federal law and state law, in order to know whether there is that collision, you have to know what federal law requires. And federal question cases are just as dispositive about the requirements of federal law as diversity cases. Let me go back to Taniguchi. There was, the only issue in the case was interpreting the argument, or was there, that a local law governing costs might apply. That's correct. Okay. But I think that when it comes again to the eerie analysis, that still, when you're trying to determine whether there's a conflict between Section 1920 and the state statute, it's relevant that the Supreme Court has now repeatedly and clearly held that Section 1920 is exclusive and exhaustive. It says you cannot get costs if they are not listed here, and that is directly in contrast to the state provision. There's no way around the collision here. You cannot get costs in federal, you can't get federal costs if they're not listed here. It doesn't say anything about state law that doesn't conflict with that. That's correct, Your Honor. But I think that it's important to ask what it means for these rules to collide with each other. And in one, so, Garcia refers to Federal Rule 54-D1 and says in multiple places that Federal Rule 54-D1 allows Congress to preempt state law. And this is, I think, the way to think of it is it's a kind of field preemption. Congress has passed a statute saying you can't get anything other than what's listed here. That means when you're in federal court, federal courts, and this is what Taniguchi says, have no discretion to go beyond what's in 1920. And that plays directly to what this Court is saying in Chaparral about how federal court's discretion is cabined by federal law. So we have a federal law saying you have no discretion to go beyond this list. We have a state law here that says it is discretionary to choose which costs you award. And I think Chaparral and Garcia clearly say when you combine those two things, federal courts can't go beyond this list. But you have a state law that mandates an award. The discretion is only as to amount. So to me, you're talking apples and oranges. So here we have a federal law that gives discretion in choosing the particular items. And Garcia also says when it comes to choosing items, you have to choose ones that are not in conflict with federal law. I think there are two ways of reading Garcia. And Archstone has suggested that when Garcia says we can look to state law to go beyond Section 1920, Archstone is arguing that means we can use state law to add to the items in 1920s list. But that doesn't make sense and is inconsistent with the idea that 1920 is an exclusive list. The other way you can read Garcia is when it says we can look to state law to go beyond 1920, it's we can look to state law to go beyond 1920 in situations where 1920 doesn't apply. So, for instance, when Garcia is talking about Section 1920, it quotes this case, Abrams v. Laetolier from the Third Circuit. That's talking about Rule 54D2, not D1. And 54D2 is not constrained by Section 1920. Similarly, I'm sorry. We've skipped the elephant in the room. And that is the district court didn't address this issue because it didn't say you had raised it. Not only did you not raise it, but at one point in your motion in district court, you said a party may seek discretionary awards of additional costs authorized by applicable state statute. Now, before I get to whether you preserved it, let me address your argument under plain error. To prevail under plain error, you have to say the law is plain. And you just finished saying Garcia can be read two ways. Doesn't that foreclose your plain error argument if you didn't preserve the argument? No, Your Honor, I don't think it does. I think that Taniguchi is plain. I think that Crawford Fitting is plain. We have Supreme Court precedent that says federal courts have no discretion to award costs beyond those that are listed in 1920. The fact that Garcia can be read to be inconsistent with Supreme Court precedent does not mean that the law is unclear. I think that that's a reason for rejecting Archstone's reading of Garcia. I don't mean to say that that reading of Garcia is consistent with binding Supreme Court precedent. Crawford and the other case, Tenard, are important cases, but they weren't addressing eerie issues. They weren't considering the possibility that local law is otherwise. Were they? No, they were not, Your Honor. So I would think that if there's going to be clarity of law, it would have to be in a diversity case where the issue is raised, and that would be Garcia or Chaparral. So, Your Honor, I think that it's actually possible to look at Taniguchi and look at Chaparral and see plain error here, because Chaparral says federal law constrains the exercise of discretion. That's clear. And Taniguchi says you have no discretion to award costs beyond 1920. That's clear. The fact that it's a novel context doesn't mean that it wasn't plain error. Now address whether you preserved it below, particularly when you said, and I quoted I think the most damaging statement in your brief. Sure, I understand. And that statement is consistent with what we've been arguing all along, which is that there are some circumstances in which courts may look to state law to award costs, but those circumstances don't apply here. The sentence that you read uses the word appropriate statutes. It's the topic sentence of a paragraph. In that same paragraph, we go through and say Wait, wait, wait. You're saying the sentence I quoted, a party may seek discretionary awards of additional costs authorized by applicable state statute. That's correct. You're putting it in context based on the heading in that section? No, not at all. I'm saying that sentence is elaborated on by the second sentence and the third sentence. That sentence contains the word applicable state statutes. The next sentence says to be applicable, statutes have to explicitly authorize these awards. And it cites Crawford Fitting. We cite Garcia. And we say the statutes at issue here do not. They don't apply. They don't authorize these awards. So that first sentence is, like I said, it's consistent with what we've always argued. You can look to state law in some circumstances. Those state circumstances are not here, are not met here. But in fact, your argument today is inconsistent with even allowing the application of a state statute that explicitly allows costs that aren't allowed under D1. Your Honor, I seem out of time. May I answer the question? Yes. I don't think that's correct, because you can look to Garcia, which is completely consistent with our theory, where there is a broad general mandate, and you can award costs under that mandate under state law for 5042, for Rule 68, so long as they're not inconsistent with 1920. So Garcia shows exactly how that sentence can allow discretionary awards under an express mandate where state and federal law interact. Thank you, Your Honor. Thank you. Good morning, Your Honors. Adam Banks for the Arstone defendants. I'd like to start kind of where we ended. The district courts here, I think, carefully followed this court's decision and guidance in Garcia. It followed the consistent and settled practice in the district courts in Colorado in applying the cost statute, and also applied the rule that plaintiffs told the court it should apply in their motion to the court to review the cost. They said, as Your Honor quoted, a party may seek discretionary awards of additional costs authorized by applicable state statute. And we just heard that here they're asking that the discretion is the whole point, that they say now that costs must be mandatory under state law to be recoverable. That argument simply didn't appear anywhere in the district court briefs that plaintiffs put in to review the court's cost award. As Judge Martinez found, they put it in only in their motion for reconsideration, and therefore forfeited it. I think if you look at what they said in their brief on the issue, they pointed the court to a letter that they submitted to the clerk seeking the taxation of costs, and there they say they made the argument that it should be mandatory. I think if that's true, and if that's where they think they made the argument, I think we're even closer to waiver than we are to forfeiture, because they didn't re-urge that argument before Judge Martinez. In fact, they told him that discretionary awards are available under federal law here in this diversity case. And I think we've heard again that they refer to the sentences following that in their brief, in which they say they said the applicable state statute has to be expressly authorized. If you look at the text of what they said in their brief, they said it only had to be authorized under state law. If the test is now that it has to be expressly authorized under state law, that's something different. And I know the difference between expressly authorized and merely authorized might sound like not a very big deal, but that is in fact the entire premise of the appeal. The whole argument in the district court was whether Colorado law authorized these costs at all or whether they didn't. Judge Martinez found that they did, and it wasn't until the motion for reconsideration that Plains decided that the rule actually was they had to be expressly authorized or mandated to be recoverable, and that's just not what they said. It's also not what the is fully consistent with Judge Martinez's award here. The first is under the standard area analysis that we've been discussing this morning. If there is a conflict, if there is no conflict, excuse me, between the state law costs award and the category of costs that are being sought between that and federal law, then the state law applies, and that's plain on page 1177 of the Garcia decision. There's no argument here that federal law is directly in conflict with the categories of costs that we're seeking, the electronic research, the attorney travel. The conflict that plaintiffs are suggesting is with section 1920 itself, but Garcia also says that section 1920 itself doesn't create that conflict, and I think it's worth reading what the court said at page 1177 about this exact issue. It said, there is no federal statute or rule providing the rule of decision when a federal court is asked to award litigation expenses other than those enumerated as section 1920 costs. Well, how do you reconcile that with Crawford? Crawford says exactly the opposite, doesn't it? Yeah, it does, but Crawford is talking about what's available under section 1920 in the federal question case. No, it's interpreting 54D1. It is. And it's saying costs under 54D1 is defined by section 1920, and there's no discretion to award anything other than those costs enumerated in 1920. That's the federal law. That's how they interpret the federal rule. That's how they interpret the federal rule, absolutely. Okay, and so under an NERIA analysis, as long as the federal rule is legitimate, as long as it's a procedural rule, not a substantive rule, then it controls no matter how much it infringes on state law. That's Shady Grove, you're probably familiar with that. Sure. That's a pretty remarkable case in that regard. Sure. That's correct, but that's not the way this court understood Crawford fitting in the Garcia case and in the NERIA analysis. I'm not sure it was necessary to get Crawford right there, but you agree that Crawford, to the extent that Chaparral reads Crawford otherwise, it's wrong, is it not? Well, I think Chaparral is talking about, and this is the way, again, that Garcia read Chaparral, is talking about, the exception is talking about an express federal statement to the contrary. Neither it nor Crawford fitting really discussed what was available under the proper NERIA analysis that Garcia adopted here, which is when there is a direct conflict, you apply the federal law. I mean, I would say as an aside, the rule that plaintiffs are suggesting here also doesn't seem to make much sense because, at least under their reading of Crawford fitting, because if the statute, if it's mandatory under state law, it seems to me the conflict with federal law is sort of at its apex, right? And so it doesn't make sense that that's the only situation in which you would defer to a state law is when the conflict is at its ripest. So that doesn't make sense either. Our law, Tenth Circuit law, doesn't make much sense in this area, does it? Well, I think if plaintiffs' reading of the law, of the Tenth Circuit law, I don't think makes much sense. But I think as Garcia law- Well, how would you read it to make sense? What's that? But if you read it to make sense, you're going to come up with something contrary to Crawford and Shady Grove, aren't you? I don't think so, because I think, again, neither of those cases is discussing the particular context of the Erie decision, of the Erie interests that are involved in a diversity case. But yes, it is, because they're addressing what step one of Erie says. They're saying this is what the rule requires. The rule, Rule 54-D-1. 54-D-2 is kind of interesting and the circuit cases that we cited in Chaparral and Garcia are generally 54-D-2 cases. Would you agree? I think- They're burdened. They consider state laws that are burden-shifting in specific types of cases, antitrust or employment discrimination, where you shift attorney fees. And that's what 54-D-2 addresses. That's what 54-D-2- Attorney fees and associated costs. Yes. But the reason Crawford and Tanaka, I'm going to get the name wrong, are so important is they tell you what the rules allow, what Rule 54-D-1 allows. And they're pretty strict. They say, under the federal rule, you can't award any costs other than those in the statute. 1920 is it? And if that's the case, then if Rule 54-D-1 is a valid procedural rule, it overrides any state law that would allow additional costs. Your Honor, that's one reading of Taniguchi and Crawford Finney. I think Taniguchi is telling you what Section 1920 means. It's a very narrow decision, actually. But I think, again, it's not what this Court- Well, it's not what they've addressed Crawford. It's certainly what Crawford says. That's what Crawford says in that respect. But this Court has at least twice said something different about what Crawford means. And, again, neither that argument nor the argument that plaintiffs are making now was made to Judge Martinez and wasn't before the Court there. I'd like to make one final point, unless the Court has further questions, which is even if you accepted plaintiff's rule that costs had to be mandatory, the costs at issue here and the award at issue here and the statute under which it was issued is just as mandatory as the scheme that the Court looked at in Garcia. In Garcia, the statute said the party shall have their actual costs. Here, it said the party shall have costs. But it didn't say anything more than that in terms of what categories of costs counted. Instead, the Court went back to the district court to determine in, you know, consistent with the analysis that already laid out earlier in the opinion, that is, if there was a conflict with a specific category of costs. The statutory language may be essentially the same because it says shall. But for the statute involved in our case here, we have state appellate courts interpreting it and specifically saying it's discretionary. So maybe that suggests that we misread state law in the past. But regardless of whether the other statute is mandatory or not, hasn't the state, haven't the state courts made clear, the appellate courts made clear that the costs we're talking about in this case are not mandatory, that they're discretionary? That's true. The specific costs at issue here, the Court has, you know, the state courts have said they're discretionary. But I think the analysis that Garcia used, it had to do with whether the award of those costs at all was mandatory or not. That's because the statute in Garcia just said actual costs. It left it there. It didn't say enumeration of any kind. It didn't say they had to be mandatory, discretionary whatsoever. It said they had to be the actual costs, and that was what was awarded. And it sent it back to the district court to make an award consistent with the principles laid out earlier in the opinion, which was if the category of costs at issue there conflicted with, directly with the federal statute, then they were preempted. Otherwise, they weren't. And if it had thought that 1920, you know, completely occupied the field with respect to what was available, it had no need to have remanded for that determination. It would have prohibited them altogether. Didn't Garcia say that the costs awarded there were nondiscretionary? It said that. And it said the actual costs were nondiscretionary, but it didn't describe, and it wasn't before the court, what those actual costs were, what the nature of those costs were. It just said actual costs. And in fact, the record didn't tell them what the actual costs were at the point if they're the defendants that were getting consent. To the extent you're relying on Garcia, and you are, why wouldn't that pose some tension with the Colorado cases saying that the types of costs here are discretionary? Well, because Garcia didn't impose that as a limitation. It stopped its mandatory analysis with the word shall in the statute that said actual costs. It didn't look behind that to say, okay, are the actual costs mandatory or not in this situation? The only rule that they applied was that they couldn't be in conflict with a comprehensive federal scheme like the expert witness fees in Chaparral. They didn't say anything more than that. And that was the rule that they applied. How do you reconcile the words express statutory authorization used in the Chaparral case with Garcia? I think, and the way that Garcia reconciled them was that those words referred to express the federal statutory authorization. And I think there's a, if you look at page 1178 of the decision, they actually have an insert where they put the word federal in brackets when they're describing that passage in Chaparral. So the way that Garcia understood it was, and this makes sense in a way, because the issue in Chaparral was expert witness fees. The federal law said you get $30, $40 a day. The Colorado law said you could depart from that. And they said unless the federal law is going to specify somewhere else something more specific for this kind of case, you have to stick with what 1920 says or 1821 in that case. But that's not, again, not the issue here. It didn't address what would be available in state law, under state law, whether there's a statute that provides for that. Let me ask you one other thing about Crawford 54-D1 and reference in Crawford to explicit statutory authority, given that it was a federal question case. Was it a federal question case that was its take on 1920 that there needed to be another federal statute that gave express statutory authority and really wasn't addressing the situation that comes up in our case? I'm sorry. Yeah. It wasn't addressing, Crawford wasn't addressing the situation, I don't think, at all. It was interpreting how 54-D1 and 1920 interact. It didn't address what might also be available under state law in a diversity case. It had no occasion to do that. And the only times that this court has tried to understand how Crawford applied in that circumstance is in Garcia where it identified that there wasn't conflict. Did the treatment of 54-D1 in Crawford leave open for some flexibility beyond what it said about 54-D1 there? Sure. I mean, I think it had no reason to consider how it would apply in a diversity case. So that question remained open and the Supreme Court hasn't said anything else about it in that way. This court has addressed the issue, again, in Garcia quite clearly in our view and quite clearly the way that Judge Martinez understood it, the way that other Colorado district courts have understood it, and again, the way plaintiffs themselves understood it the first time they made the issue in their briefs. So unless the court has any other questions, we ask that the court affirm the cross-award. Thank you, counsel. The case is submitted. Counsel are excused and we'll be taking a brief break at this time.